NOT DESIGNATED FOR PUBLICATION

No. 119,543

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH CHARLES TONGE JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Opinion filed September 13, 2019. Affirmed in part, sentence vacated, and case remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and BUSER, JJ.

PER CURIAM: Joseph Charles Tonge Jr. appeals the district court's denial of his presentence motion to withdraw his plea of no contest to aggravated robbery. He claims for the first time on appeal that the district court erred in failing to question whether his defense counsel had a conflict of interest at this plea withdrawal hearing. Since Tonge has not shown an abuse of discretion in denying his request to withdraw his plea, we affirm the district court on that point. He also challenges how two of his felony convictions were scored, thus making his sentence illegal because of an erroneous criminal history score.

1

Because we find that the court used an incorrect criminal history score, we vacate his sentence and remand for resentencing.

In September 2017, Pottawatomie County law enforcement officers received a report that a man—badly beaten, bleeding, and naked—went to a resident's home and needed help. Upon further investigation, officers identified the man as J.B., who had injuries to his thighs, lower back, and face and had been stabbed. The officers learned that J.B. had been trying to meet men through the Internet.

One of those men J.B. identified was Tonge. J.B. reported that when they met, Tonge had brought another man with him. The three went to a fishing area in J.B.'s truck. Tonge and the other man convinced J.B. to remove his clothing. J.B. believed they would engage in consensual sex. At that point, Tonge came up behind J.B., put him in a chokehold, and then both men beat J.B. One of the men stabbed J.B. The two attackers left J.B., taking his truck and all of his property in the truck.

Later, J.B. identified Tonge in a photo array. Upon further investigation, the officers discovered from a download of Tonge's phone that he had conversed with J.B. through an Internet chatroom. These same communications were also found on J.B.'s laptop. The officers retrieved two bags from Tonge's common-law wife that Tonge had given her. The bags contained bloody clothing and some electronic equipment belonging to J.B.

The State charged Tonge with aggravated robbery, aggravated battery, burglary of a motor vehicle, and felony and misdemeanor theft.

Tonge entered into a plea agreement with the State on the charge of aggravated robbery. In his acknowledgment of rights and entry of plea, Tonge said, "I believe that my lawyer has done a good job counseling and assisting me, and I am satisfied with the

advice and help my lawyer has given me." As part of the agreement, Tonge and the State anticipated his criminal history score was A. In exchange for his plea, the State agreed to dismiss the remaining charges and recommend a durational departure to 15 years. Tonge could argue for a greater departure to 10 years.

At his plea hearing, Tonge acknowledged the rights he was waiving by entering his plea. He wanted to proceed and entered a plea of no contest to aggravated robbery. After the State's recitation of the factual basis for the charge, defense counsel agreed that the facts were enough to sustain a finding of guilt. The district court found there was a factual basis for the plea and found Tonge guilty of aggravated robbery. The court dismissed the remaining charges and ordered a presentence investigation report.

Before sentencing, Tonge asked to withdraw his plea, citing a newly discovered recorded statement of his codefendant, which was provided to him at the time of his codefendant's trial. The codefendant's trial was after Tonge entered his plea. Based on the recording, Tonge had a "change of position regarding his plea."

At the hearing on Tonge's motion, the district court found the State was unaware of the recording until his codefendant's trial. Defense counsel argued that based on the recording, "I think [Tonge is] just no longer comfortable with the plea that he has entered into and is asking to withdraw the plea and proceed to trial and take his chances at trial."

The State maintained that the plea was favorable to Tonge since his criminal history score was A and the State agreed to recommend a downward durational departure. The State also noted that the plea was not based on either Tonge or his codefendant giving evidence against each other. The codefendant's recorded statement went into more detail about what occurred at the lake, but said nothing different. The recording was consistent on the point that Tonge forced his codefendant to help beat J.B.

3

When the district court considered the relevant factors and caselaw, it stated the recording needed to be part of the record, but found the recording did "nothing to even slightly exonerate [Tonge]." The court also found Tonge was represented by competent counsel, was not "misled, coerced, mistreated, or unfairly taken advantage of, and the plea was fairly and voluntarily made." The district court found the recording was not good cause to withdraw Tonge's plea and denied his motion.

The presentence investigation report reflected Tonge had 16 prior nonperson felony convictions and three prior person felony convictions. It assigned Tonge a criminal history score of A.

At sentencing, defense counsel revealed he reviewed the report with Tonge. Tonge recognized the entries, did not object to any of them or to his criminal history score of A, and agreed with the findings in the report. The district court found Tonge's criminal history score was A.

Conforming to the plea agreement, the State noted Tonge's presumptive prison sentence was about 19 years, but it agreed to recommend a downward departure to 15 years. The State argued that there were substantial and compelling reasons for a departure, but those reasons were to benefit J.B., who was traumatized and humiliated by the crimes and did not want to expose his family to a trial. The court sentenced Tonge in accordance with the State's recommendation to 180 months in prison for aggravated robbery.

*Tonge contends the court abused its discretion in denying his motion.*

Tonge contends for the first time on appeal that the district court erred in hearing his presentence motion to withdraw his plea without sua sponte addressing an "implicit" conflict of interest with his defense counsel and then appointing new counsel. He argues

4

that the questions regarding his Sixth Amendment right to competent representation before entering his plea was underlying his motion to withdraw that plea. He claims the district court should appoint new counsel upon remand before proceeding on the merits of his claim that there was good cause to withdraw his plea. The State argues there is no Sixth Amendment violation here because Tonge never made the district court aware that a conflict existed. The district court thus was under no duty to inquire into a hypothetical conflict.

Pleas of guilty or no contest may be withdrawn at any time before sentence for good cause shown and are within the discretion of the court. K.S.A. 2018 Supp. 22-3210(d)(1). We review such questions for an abuse of discretion. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

A judicial action constitutes an abuse of discretion if
- no reasonable person would take the view adopted by the trial court;
- it is based on an error of law; or
- it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. See *State v. Collins*, 303 Kan. 472, 477, 362 P.3d 1098 (2015).

The sole reason cited in Tonge's motion to withdraw his plea was not ineffective counsel, but a recorded statement produced to Tonge at the time of his codefendant's trial after Tonge entered his plea.

At the plea withdrawal hearing, the district court considered the *Edgar* factors in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), and cited them in the context of

5

*State v. Green*, 283 Kan. 531, 153 P.3d 1216 (2007). The district court found it was Tonge's burden to prove the factual basis for his plea was so undercut by the new evidence that the State would not have been able to prove its case at trial beyond a reasonable doubt. The district court found that the recording "does nothing to even slightly exonerate [Tonge]," and it did not undercut the factual basis for the plea "in any way." The district court found that the new recording was not good cause to allow withdrawal of Tonge's plea and denied his motion. The court also found the *Edgar* factors—including the right to competent counsel—were not violated.

To us, Tonge argues that the conflict with his defense counsel when he asked to withdraw his plea was implicit because his attorney was unaware of the recording before he entered his plea. He questions whether his attorney should have learned of the recording through investigative efforts before he entered his plea. That argument is unpersuasive. If we approved of this argument, district judges would have to become mind readers and discern in some way that there is a conflict between an accused and the attorney. The law does not require such extraordinary abilities. The law requires written or spoken words, not ESP.

Such words come to a court when a defendant makes "'an articulated statement of attorney dissatisfaction.'" Then a district court has an obligation to inquire into a potential conflict of interest. *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 (2014). Here, Tonge does not claim that he articulated dissatisfaction with his attorney at any stage of the proceedings below, nor does the record reveal that he did so. To the contrary, Tonge said he was satisfied with his attorney's representation.

Our record on appeal has a crucial deficiency. The recording that caused Tonge to ask to withdraw his plea is not part of the record on appeal. This deficiency has consequences. The party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, an appellate

6

court presumes the action of the trial court was proper. See *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015).

Without the recording, this court cannot assess whether defense counsel was ineffective for failing to discover it sooner. We presume then that the district court's actions were proper in finding the recording did not exonerate Tonge and did not provide good cause for him to withdraw his plea. Thus, Tonge was not prejudiced by his defense counsel's failure to locate the recording prior to entering his plea. The requirements are set out in *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014), when the court ruled that ineffective assistance of counsel requires proof of deficient performance and prejudice. Since counsel was effective and competent at the time of the plea, defense counsel had no conflict when Tonge asked to withdraw his plea.

In addition, the ground for withdrawal specified in the motion—the discovered recording—did not implicate the adequacy of the attorney's representation. Tonge's trial lawyer had no conflict or apparent conflict in arguing the motion. The district court had no duty to inquire into a potential or "implicit" conflict. It did not abuse its discretion based on a mistake of law, and its denial of Tonge's motion to withdraw his plea must be affirmed.

*We find an error in the criminal history score.*

Tonge contends his sentence is illegal because he was erroneously sentenced using a criminal history score of A instead of C. He argues two of his prior felony convictions for burglary should have been classified as nonperson crimes.

A sentence is illegal under K.S.A. 2018 Supp. 22-3504(3) when:
- it is imposed by a court without jurisdiction;

7

- it does not conform to the applicable statutory provisions, either in character or punishment; or
- it is ambiguous with respect to the time and manner in which it is to be served. *State v. Hayes*, 307 Kan. 537, 538, 411 P.3d 1225 (2018).

Despite the State's argument to the contrary, it is well-settled that under K.S.A. 22-3504(1), a court may correct an illegal sentence at any time. Thus, a defendant may challenge a sentence even for the first time on appeal. *State v. Fisher*, 304 Kan. 242, 264, 373 P.3d 781 (2016). Tonge argues his sentence was illegal because it did not conform to the applicable statutory provisions. See *Hayes*, 307 Kan. at 538.

The presentence investigation report reflects that Tonge had four prior convictions for burglary under K.S.A. 21-3715; three were designated as person felonies. Tonge argues that two of his convictions for burglary from 1989 and 1991 should have been classified as nonperson felonies because the statute in effect at the time did not include the element of a dwelling, which was added to K.S.A. 21-3715 in 1993. Thus, he claims his criminal history score should have been C instead of A. Tonge is correct.

In determining whether prior offenses may be used as a person felony or otherwise be used to enhance a defendant's sentence, the district court is constitutionally prohibited under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), from making additional factual findings beyond simply identifying the statutory elements of the primary offense. *State v. Dickey*, 301 Kan. 1018, 1039, 350 P.3d 1054 (2015). But see *State v. Wetrich*, 307 Kan. 552, 558, 412 P.3d 984 (2018). *Wetrich* found that the issue of comparable offenses can be decided on statutory interpretation and adopted the "identical or narrower rule" as a requirement to finding a comparable offense under K.S.A. 2017 Supp. 21-6811(e)(3). 307 Kan. 552, Syl. ¶ 3. This constitutional prohibition is important here.

When designating a preguideline conviction as a person or nonperson crime in the criminal history, the court must consider how the crime would have been classified based on the classification in effect for the comparable Kansas offense when the current crime of conviction was committed. *State v. Keel*, 302 Kan. 560, Syl. ¶¶ 8-9, 357 P.3d 251 (2015). Contrary decisions in *State v. Williams*, 291 Kan. 554, Syl. ¶ 4, 244 P.3d 667 (2010), and *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), were specifically overruled by the majority in *Keel*, 302 Kan. at 589-90. Without constitutional concerns, any doubt on the treatment of pre-KSGA convictions has been largely resolved by the Legislature in HB 2053, L. 2015, ch. 5, § 2, effective April 2, 2015.

That recent enactment gives us guidance on this question. Under K.S.A. 2018 Supp. 21-6811(d), prior adult burglary adjudications are to be scored for criminal history purposes as either person or nonperson felonies depending on certain factors:

> "(1) As a prior *person* felony if the prior conviction or adjudication was classified as a burglary as defined in K.S.A. 21-3715*(a)*, prior to its repeal, or K.S.A. 2018 Supp. 21-5807(a)(1), and amendments thereto.
> "(2) As a prior *nonperson* felony if the prior conviction or adjudication was classified as a burglary as defined in K.S.A. 21-3715*(b) or (c)*, prior to its repeal, or K.S.A. 2018 Supp. 21-5807(a)(2) or (a)(3), and amendments thereto.
> "The facts required to classify prior burglary adult convictions and juvenile adjudications shall be established by the state by a preponderance of the evidence." (Emphases added.)

This statute addresses the way K.S.A. 21-3715 was configured before its repeal in 2011. Before its repeal, K.S.A. 21-3715 (Torrence 2007) specified:

> "Burglary is knowingly and without authority entering into or remaining within any:
> "(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;

9

"(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein; or

"(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein."

The statute in effect when Tonge was convicted of burglary in 1989 and 1991 used numbered clauses within the primary paragraph. Between 1989 and 1991, K.S.A. 21-3715 provided:

"Burglary is knowingly and without authority entering into or remaining within any: (1) Building, mobile home, tent or other structure, with intent to commit a felony or theft therein; or (2) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein.

"Burglary as described in subsection (1) is a class D felony. Burglary as described in subsection (2) is a class E felony." K.S.A. 1989 Supp. 21-3715; K.S.A. 1990 Supp. 21-3715; see K.S.A. 1991 Supp. 21-3715 (added manufactured home to subsection [1]).

Tonge's PSI report does not specify under which subsection of K.S.A. 21-3715 he was convicted in either the 1989 or 1991 case. And his challenge to the person classifications for his convictions is not resolved by K.S.A. 2018 Supp. 21-6811(d).

In our view, the burglary statute between 1989 and 1991 lacked the element of a dwelling. The district court's person classifications for the 1989 and 1991 convictions then necessarily required a judicial finding of fact, i.e., that the statutorily required "structures" that Tonge burglarized were dwellings. And that is what a court cannot do now.

Because that finding goes beyond merely identifying the statutory elements of the prior burglary conviction, it is prohibited by *Descamps* and *Apprendi*, as applied in *Dickey*. We also rely on *State v. Cordell*, 302 Kan. 531, 534, 354 P.3d 1202 (2015), when

10

the court ruled that "the distinction between person and nonperson burglaries under K.S.A. 2014 Supp. 21-6811[d] hinges on whether the offender burglarized a dwelling, which was not an element of burglary in 1986."

Without this prohibited finding, Tonge's 1989 and 1991 burglary convictions must be classified as nonperson crimes. That classification leads to a criminal history score of C—for one person felony conviction instead of three.

We reject the State's request to set aside the plea agreement before remand because a motion to correct an illegal sentence cannot serve as the means to reverse a conviction. See *State v. Bradford*, 299 Kan. 288, 289, 323 P.3d 168 (2014). But we do hold that there is a mutual mistake of the parties. When both the State and Tonge thought his criminal history score was A, they agreed to recommend downward departures. Now that we have found that his criminal history score is C, in order to make the same sentence recommendation, the parties would have to argue for upward departure sentences. This mistake nullifies that portion of their agreement. Upon remand, the parties should be free to argue for a correct sentence as determined by the severity level of the crime and Tonge's criminal history score.

We affirm the denial of Tonge's motion to withdraw plea, vacate his sentence, and remand his case for resentencing with directions to score his criminal history as C.